**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 2:18-bk-50293 |
| | : | |
| Kenneth L. Perry | : | Chapter 13 |
| | : | Judge C. Kathryn Preston |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| **Palmetto Construction Services, LLC** | : | |
| 892 Scott Street | : | |
| Columbus, OH 43222, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Adv. Pro. No. |
| | : | |
| **Kenneth L. Perry** | : | |
| d/b/a Perry's Heating and Cooling | : | |
| 9438 US Highway 62 | : | |
| Orient, OH 43146, | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT FOR DETERMINATION OF NONDISCHARGEABILITY OF DEBT**

Plaintiff Palmetto Construction Services, LLC ("Palmetto") for its Complaint against Debtor Kenneth L. Perry, d/b/a Perry's Heating and Cooling ("Perry"), states the following:

1. This case commenced on January 1, 2018 ("Petition Date") by a voluntary petition seeking relief under chapter 13 of the Bankruptcy Code.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and the general order of reference for this district. This matter is a core proceeding that is provided in 28 U.S.C. § 157(b).

1

3. Palmetto is a creditor of Perry. The entire amount of Plaintiffs' claims (to be determined in this proceeding) are not dischargeable in bankruptcy for the reasons set forth below.

## FACTS COMMON TO ALL COUNTS

4. The Licking County Board of County Commissioners (the "Board") is the owner of the project known as the Licking County Child Support Services project (the "Project"), located at 65 East Main Street, Newark, Ohio ("the Project"). Palmetto entered into a contract with the Board to serve as the general contractor on the Project.

5. On or about March 7, 2017, Palmetto entered into a subcontract with Perry under which Perry agreed to provide HVAC services and other related work for the Project (the "Subcontract"). In return, Palmetto agreed to pay for such HVAC services and related work in accordance with the terms and conditions of the Subcontractor. A true and accurate copy of the Subcontract is attached as *Exhibit A*.

6. The Subcontract contained multiple provisions that are of particular relevance to this case.

7. The Subcontract Sum was originally $843,000.00. However, the Subcontract provided that "no payments are to be made unless Subcontractor's [i.e., Perry's] rate of progress, and quality of Work done and material and services furnished are satisfactory to the Contractor [i.e., Palmetto] and in full compliance with the Contract Documents." (Subcontract at Section 4.1.)

8. The Subcontract further provided that "[b]efore Contractor is obligated to pay any amount, the following conditions must have occurred:

2

      a.    "The actual Work must have been timely performed in accordance with the Contract Documents to the satisfaction of Contractor, in its sole discretion.

      b.    "Contractor must have actually received from the Owner payments for the actual Work completed by Subcontractor.

      c.    "Subcontractor must be in compliance with each and every provision of this Subcontract.

      d.    "Subcontractor, its agents or employees have not omitted or committed any act for which Contractor could be liable.

      e.    "Remit Payment Form is completed and returned."  (Subcontract at Section 4.2.)

9.    Section 7.1 of the Subcontract made clear that "[t]he obligation of Subcontractor to perform the Work to the satisfaction of Contractor is absolute and without exception."

10.    Section 34.1 of the Subcontract provided, in part, as follows:

> If Subcontractor (a) fails or refuses to proceed with or to properly perform the Work as directed by the Contractor, or (b) fails or refuses to properly perform or abide by any terms, convenants, conditions, or provisions contained in this Subcontract or the Contract Documents *** Contractor may, at its option, without releasing or waiving rights and remedies against Subcontractor's sureties and without prejudice to any other right, terminate the Subcontract and take possession of the Work and all materials, tools, equipment purchased for the project, and appliances of Subcontractor and finish the Subcontractor's Work by whatever means, method or agency which the Contractor may, in its sole discretion, choose.

11.    Section 34.1 of the Subcontract further provided, in part, as follows:

> Moreover,, all monies expended and all of the costs, losses, damages and extra expenses, including all management, administrative and other overhead and other direct and indirect expenses (including attorneys' fees) incurred by Contractor incident to such completion shall be deducted from the Contract Price, and if such expenditures, together with said costs, losses, damages, and extra expenses, exceed the unpaid balance of the

3

Contract Price, Subcontractor agrees to pay promptly to the Contractor, on demand, the full amount of such excess, including costs of collection, attorney's fees and interest thereon at the maximum legal rate of interest per annum until paid.

12. Section 34.4 of the Subcontract provided, in part, as follows:

If Subcontractor fails to commence work at the time required, or fails to properly and diligently prosecute the work covered by this Agreement or make the progress required, or fails to correct or replace any damaged or defective work or materials, or is otherwise guilty of a breach of a provision of this Agreement and fails within forty-eight (48) hours after receipt of written notice to commence and satisfactorily continue correction of such default with diligence and promptness, then Contractor, at its option and in addition and without prejudice to any other rights or remedies afforded herein or by law, shall have the right to take any action it deems necessary to correct Subcontractor's default. *** If Subcontractor fails to commence and satisfactorily continue correction of a default within forty-eight (48) hours after receipt by Subcontractor of the notice issued hereunder, then Contractor may terminate Subcontractor's right to perform under this Agreement and may use any materials, equipment or tools furnished by or belonging to Subcontractor to complete Subcontractor's work without further compensation to Subcontractor for such use. Contractor also may furnish those materials and quipment and/or employ such works or subcontractors as Contractor deems necessary to maintain the orderly progress of the work including a 15% mark-up for overhead and supervision.

13. Section 44 of the Subcontract provided that "[i]f Contractor employs attorneys or incurs other expense it may deem necessary to protect or enforce its rights under this Subcontract (or in connection with any Work done or agreed to be done by Subcontractor on this Project), Subcontractor and the surety, if any, on its bond, jointly and severally agree to pay the attorney's fees and expenses so incurred by Contractor."

14. Section 46.3 of the Subcontract provided, in part, that litigation of a dispute arising under the Subcontract take place in Franklin County, Ohio.

4

15. Palmetto complied with the terms of the Contract and paid Perry a total of $50,000 for the work that was allegedly performed in a satisfactory manner in compliance with the terms and conditions of the Subcontract. On or about July 27, 2017 Perry executed a lien waiver for this payment, a true and accurate copy of which is attached hereto as ***Exhibit B***.

16. Perry's work on the Project was generally deficient, incomplete, unworkmanlike, untimely and unacceptable to Palmetto under the terms and conditions of the Subcontract.

17. Perry failed to appropriately plan, manage, and schedule work on the Project. Notably, Perry "front-loaded" the schedule in an attempt to obtain early payment. As a result, Perry allocated too little of his budget to critical items within the scope of work.

18. Examples of the deficient work performed and delays caused by Perry included the following:

    a. Perry did not provide the drawings and submittals required by the Subcontract, and therefore was not in a position to install ductwork and piping by the time required by the Project schedule;

    b. Perry failed to timely order and pay for critical equipment for the HVAC system, including but not limited to air handling units ("AHUs") manufactured by Johnson Controls, Inc.. Notably, Perry had insufficient credit with many suppliers and was therefore unable to order critical material and equipment within the scope of work;

    c. Perry failed to provide sufficient manpower in order to support the Project schedule;

    d. Perry failed to install necessary piping, ductwork and the AHUs;

    e. Poor workmanship with regard to the ductwork that was installed;

    f.  Perry failed to provide itemized list of materials/equipment, drawings and submittals.

19. On or about August 22, 2017, Palmetto issued a 48-Hour Notice to Perry, a true and accurate copy of which is attached hereto as ***Exhibit C***.  The 48-Hour Notice detailed the deficiencies noted above and others, and demanded, in accordance with the Subcontract, that Perry correct these deficiencies.

20. Perry failed to provide a response to the 48-Hour Notice that set forth a meaningful plan to remedy the deficiencies outlined therein.

21. On or about August 25, 2017, Palmetto issued a Notice of Termination to Perry, a true and accurate copy of which is attached hereto as ***Exhibit D***.  The Notice of Termination outlined multiple deficiencies of the work performed by Perry, and informed Perry "Palmetto Construction Services effectively immediately is exercising Article #34 Termination of the [Subcontract] to terminate Perry Heating & Cooling."

22. On or about August 29, 2017, Palmetto entered into a subcontract agreement with a replacement HVAC contractor, H&A Mechanical, Inc ("H&A").  Due to the untimely, incomplete and deficient work performed by Perry, Palmetto was forced to agree to a substantially-increased subcontract amount with H&A.  The initial subcontract sum Palmetto agreed to pay H&A was $1,170,000.00.

23. H&A promptly begin work on the HVAC scope of the Project, including ordering the necessary materials and equipment that Perry failed to pay for, let alone install.  This material and equipment included 3 AHU units manufactured by Johnson Controls, Inc.

24. On or about September 5, 2017, counsel for Perry, Mr. James P. Connors, Esq., sent a letter to Palmetto in response to the Notice of Termination, a true and accurate copy of

which is attached hereto as *Exhibit E*. In this letter, Mr. Connors (on behalf of Perry) claimed that Perry was "wrongfully terminated from the project." Mr. Connors also claimed that approximately $295,000 was due and owing to Perry for work completed on the Project, and that "[t]here is approximately $100,000 due for materials that must be paid to suppliers."

25. On or about October 16, 2017 Perry sent an email (a true and accurate copy of which is attached hereto as *Exhibit F*) to Paul Campbell, senior project manager for Palmetto. In this email, Perry claimed: "We need to be paid for all equipment used on the job before the contract was terminated. We currently owe Professional supply [sic] $128,710 and they are demanding payment. We need payment from you as this is equipment used BEFORE contract termination. Once we receive payment we are prepared to remove Perry's heating and cooling's [sic] name from the stored equipment ordered from Johnson Controls and release that to you guys. Please advise as to when payment will be received so we can let our supplier know as to when they will receive payment."

26. In support of its claim that a material supplier required payment, Perry provided an invoices for materials from a company called "Professional Supply, Inc." (See *Exhibit G* attached hereto.)

27. The September 5 letter and October 16 email contain multiple falsehoods. Palmetto does not owe Perry any money for work performed on the Project. Perry's work was deficient, untimely, and not accepted by Palmetto under the terms and conditions of the Subcontract.

28. Palmetto does not owe Perry for any materials that were provided on the Project. Indeed, Palmetto was forced to pay several of Perry's suppliers directly.

29. Perry does not have any control or claim of ownership over the HVAC equipment manufactured by Johnson Controls, Inc. This HVAC equipment was the property of Johnson Controls, Inc. and never paid for by Perry. This HVAC equipment was only shipped to the warehouse at Capital City Group after Perry's interest in the Subcontract was terminated. Johnson Controls, Inc. subsequently represented that it owned the HVAC equipment and directed that the equipment be tendered to H&A for incorporation into the Project. Indeed, the HVAC equipment was eventually paid for by H&A, not Perry.

30. The Subcontract permitted Palmetto to take control over the HVAC equipment subsequent to Perry's termination in an effort to complete the Project and mitigate damages.

31. Upon information and belief, the "Professional Supply, Inc." entity identified by Perry as having furnished materials on the Project does not exist. Moreover, the address "2365 Performance Way, Columbus, Ohio 43207" listed on the invoice for "Professional Supply, Inc." is false, and is instead the address of a completely unrelated and unaffiliated company.

32. Perry's false representations that it owes "Professional Supply, Inc." money for materials furnished on the Project, which were made individually by Perry as well as in concert with others purporting to represent a company called "Professional Supply, Inc.," were made to Palmetto in an attempt to (1) coerce Palmetto into making an otherwise unjustified payment to Perry, (2) delay and obstruct delivery of the HVAC equipment to the Project, and (3) avoid termination and unjustifiably prolong Perry's involvement on the Project.

33. Perry's continued attempts to claim an ownership interest in and/or control over the HVAC equipment is an effort to hold the Project hostage and coerce Palmetto into making an otherwise unjustified payment to Perry.

34. Palmetto has incurred significant costs and damages as a result of Perry's misrepresentations, combined with Perry's deficient performance and failure to order critical components for the Project. These costs and damages include, but are not limited to, (1) the delay in incorporating the HVAC into the Project, (2) the time, effort, cost and attorneys' fees incurred but-for Perry's attempt to hold the Project hostage and coerce and otherwise unjustified payment to Perry; (3) delays and costs incurred as a result of Perry skirting termination and prolonging its involvement on the Project; and (4) the increased costs associated with obtaining a replacement HVAC subcontractor midway through the Project.

## COUNT ONE

### Nondischargeability of Indebtedness under Section 523(a)(2)

35. Palmetto hereby incorporates the allegations set forth above as if fully rewritten herein.

36. Perry, on its own and in concert with others, made false representations to Palmetto before and after termination of the Subcontract, including but not limited to: (1) reassuring Palmetto that Perry had the capability and financial wherewithal to order (and pay for) critical HVAC equipment; (2) falsely claiming that Perry had an ownership interest in and/or legal control over the HVAC equipment stored at Capital City Group; (3) falsely claiming that amounts were due and owing to an entity called "Professional Supply, Inc." for materials furnished to the Project; and (4) falsely representing the corporate existence, ownership and location of an entity called "Professional Supply, Inc."

37. Perry's misrepresentations were made falsely, with knowledge of their falsity, and/or with such utter disregard to their truth that knowledge may be inferred.

9

38. Perry's misrepresentations were made with the intent to mislead Palmetto into making otherwise unjustified payments to Perry, to avoid termination and unjustifiably prolong Perry's involvement on the Project, and to prevent delivery and installation of critical HVAC equipment to the Project.

39. Palmetto justifiably relied upon Perry's misrepresentations by expending substantial time and effort, and incurring substantial attorneys' fees, in order to (1) retain control over the HVAC equipment, (2) ascertain whether any amounts were due and owing to a bona fide material supplier, and (3) ensure that the HVAC material was properly ordered, paid for, delivered, stored and incorporated into the Project.

40. Palmetto incurred damages proximately resulting from Perry's misrepresentations, including but not limited to (1) the delay in incorporating the HVAC into the Project, (2) the time, effort, cost and attorneys' fees incurred but-for Perry's attempt to hold the Project hostage and coerce and otherwise unjustified payment to Perry; (3) delays and costs incurred as a result of Perry skirting termination and prolonging its involvement on the Project; and (4) the increased costs associated with obtaining a replacement HVAC subcontractor midway through the Project.

41. The false representations and omissions resulted in Palmetto suffering financial losses as detailed herein and to be proven at trial.

42. The debt represented by Palmetto's financial losses is nondischargeable in bankruptcy by virtue of Section 523(a)(2).

WHEREFORE, Palmetto demands judgment against Perry as follows:

A. For compensatory damages in an amount to be determined at trial;

  B. For judgment determining that Palmetto's claims against Perry in the amount determined at trial is not dischargeable in this case;

  C. For interest, and award of costs, and reasonable attorneys' fees; and

  D. For such other or further relief to which Palmetto may be entitled.

         Respectfully submitted,

         */s/ Timothy A. Kelley*
         Donald W. Gregory   (0021791)
         Timothy A. Kelley    (0088362)
         Kegler, Brown, Hill + Ritter Co. LPA
         65 East State Street, Suite 1800
         Columbus, OH  43215-4294
         (614) 462-5400; Facsimile:  (614) 464-2634
         dgregory@keglerbrown.com
         tkelley@keglerbrown.com
         *Attorneys for Plaintiff Palmetto Construction Services, LLC*